UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Senta Reyes,

        Plaintiff,

v.

Dr. Patricia Bauer,

        Defendant.

_____/

Case No. 11-15267

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING DEFENDANT BAUER'S MOTION FOR SUMMARY JUDGMENT [21]

Plaintiff Senta Reyes alleges that the University of Michigan School of Dentistry and various professors and officials violated her constitutional procedural and substantive due process rights and her right to equal protection when they dismissed her from the school for her academic failings.  The parties have dismissed all the defendants, with prejudice, except for Dr. Patricia Bauer ("Dr. Bauer" or "Defendant") one of Plaintiff's professors at the school, in her individual capacity.[1]  Before the Court is Defendant's motion for summary judgment on Plaintiff's §1983 Fourteenth Amendment due process and equal protection claims  (Dkt. 21.)

---

[1]"A suit against an individual in his official capacity is the equivalent of a suit against the government entity."  *Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68 (1989)).  Here, Dr. Bauer's government entity is the University of Michigan.  The parties have already dismissed the University of Michigan, with prejudice.  (Dkt. 25.)

Because the Court finds that Plaintiff has not established an Equal Protection claim, cannot assert a substantive due process claim, and that she was afforded the proper process, the Court GRANTS Defendant's motion, as discussed below.

## I.    Facts

In 2007, Plaintiff enrolled in the Doctor of Dental Surgery (DDS) four-year academic program at the University of Michigan School of Dentistry.  Plaintiff performed satisfactorily in her first year, earning a 2.425 grade point average, and proceeded to her second year.

In her second year, though, she began to experience health problems that resulted in academic issues.  She failed three classes that former Defendant Dr. Jaarda taught. (Pl.'s Resp., Ex. 3, Academic Transcript.)  She first failed Clinical Foundations II 621 (Crowns) in the fall semester. (Def.'s Mot. for Summ. J., Ex. B.)  The school's Academic Review Board (ARB), met in January, 2009 to review Plaintiff's academic records.  (*Id.*) The ARB noted Plaintiff's failing grade in Clinical Foundations II 621 (Crowns).  (*Id.*)  The ARB informed Plaintiff that it was placing Plaintiff on academic probation for her failing grade.   (*Id.*)   The ARB further informed Plaintiff that she could remediate Clinical Foundations II 621 with a passing grade in Clinical Foundations II 631 (Bridges).   (*Id.*) The ARB stressed that, if Plaintiff failed 631, and connectedly 621, a second time, she would be subject to dismissal.  (*Id.*)  The ARB told Plaintiff that it required her to work with a tutor throughout the semester.  (*Id.*)  The ARB also wrote:

> [n]eedless to say, significant improvement is desired and required to assure your continuation in the Doctor of Dental Surgery program.  This situation is "high stakes" but it is also doable and has been successfully done by others.

(*Id.*)  The ARB told Plaintiff that she would remain on probation until she no longer had a D, E, or F grade and when her grade point average for both terms and overall were above

2

a 2.0.  (*Id.*)  The ARB also told Plaintiff to set up an appointment with Dr. Marilyn Woolfolk to discuss Plaintiff's situation.  (*Id.*)

On March 20, 2009, Dr. Woolfolk informed Plaintiff that she failed Principles of Restorative Dentistry 614, taught by Drs. Stoffers and Jaarda.  (Def.'s Mot., Ex. B.)  Dr. Woolfolk informed Plaintiff that it was Plaintiff's duty to contact the professors about remediation and remediate the grade within eight weeks.  (*Id.*)

On May 13, 2009, the ARB met and reviewed Plaintiff's academic progress.  (Def.'s Mot., Ex. B.)  The ARB (through Carol Anne Murdoch-Kinch, the Clinical Associate Professor of Dentistry) informed Plaintiff that she had yet to remediate 614, that she failed Oral Pathology 624, receiving a "D" grade, and that she received an "E" in Clinical Foundations II (Bridges) 631, meaning that she failed both 621 and 631.  (*Id.*)  The ARB told her, because of those failing grades, that it was not allowing Plaintiff to enroll in the DDS program any longer.  (*Id.*)

The ARB informed Plaintiff that she could appeal its decision by appearing before it. (Def.'s Mot., Ex. B.)  The ARB told Plaintiff to contact Dr. Woolfolk if she had any questions. (*Id.*)

Plaintiff did appeal the decision.  (Def.'s Mot., Ex. B.)  And the ARB, on May 21, 2009, approved Plaintiff's request to continue in the program.  (*Id.*)  The ARB conditioned Plaintiff's further enrolment.  (*Id.*)  It first required Plaintiff to "repeat year two of dental school, including all didactic, clinic foundation and clinical courses for which [she] previously received passing grades."  (*Id.*)  It then stated that Plaintiff was going to be on academic probation for a minimum of two years.  (*Id.*)  The ARB informed Plaintiff that all appeals had to be made to the Executive Committee (EC).  (*Id.*)

3

Plaintiff chose to appeal the conditions. On August 6, 2009 (noted as 2008 incorrectly in the letter), the EC met to hear Plaintiff's appeal of the ARB's May 19, 2009 decision. (Def.'s Mot., Ex. B.)  The EC approved the ARB's recommendation, but added a further condition: "[a]ny deficiency will result in a review by the Executive Committee and will be considered grounds for immediate dismissal."  (*Id.*)

Plaintiff stated that, after the EC August, 2009 decision, she talked to Dr. May, a professor at the school, who told her to get in touch with other students who had repeated their second year under conditions the EC imposed.  (Pl.'s Dep. at 87.)  She stated that she sought information about how to go about actually completing her second year a second time.  (*Id.* at 88-89.)

Plaintiff also stated that also spoke with Dr. Woolfolk. (Pl.'s Dep. at 89.) Plaintiff stated that Dr. Woolfolk told her to talk to her professors to handle the details of proceeding through her second year again.  (*Id.* at 90.)

Plaintiff states that she did so, speaking with a number of her professors, who either required her to retake and redo all the requirements of a class or provided some relief from those requirements.  (Pl.'s Dep. at 97-99.)

Plaintiff's remaining claims in this case are against Dr. Patricia Bauer.  Dr. Bauer taught Anterior Premolar Endodontics, a preclinical course.  (Bauer Dep. at 7.)  Dr. Bauer stated that attendance was mandatory for the 150 student two-week, 8am to 5pm class. (*Id.* at 7-8.)  She explained that the course required students to attend lectures in the morning and then the students would go to the labs and complete the exercises on the teeth.  (*Id.*)  She added that the course contained three parts: the lecture; the labs; and a written exam.  (*Id.*)

4

Plaintiff alleges that she spoke to Dr. Bauer about repeating her second year.  Plaintiff allege that she approached Dr. Bauer in a lounge area of the dental school.  (Pl.'s Dep. at 114.)  Plaintiff recounted the interaction.  She stated that she walked up to Dr. Bauer, who was sitting by another student in the forum area of the dental school. (*Id.*)  Plaintiff asked Dr. Bauer if she could have a word with her.  (*Id.*)  Plaintiff then explained that she told Dr. Bauer that she "needed to take the entire year over again and meaning as well that [she] would be taking [Dr. Bauer's] class over again." (*Id.*)  Plaintiff stated that she asked Dr. Bauer whether there were any elements of the class that she would not have to retake again. (*Id.*)  Plaintiff stated that Dr. Bauer asked her if she had previously passed the class, to which Plaintiff responded affirmatively.  (*Id.*)  Plaintiff then stated that Dr. Bauer told her that she needed to prepare teeth again, so that Plaintiff could show that she was competent in drilling and filling the teeth.  (*Id.* at 115.)  Plaintiff also stated to Dr. Bauer that she was not one of the masters or PhD students, who, at times, popped up in Dr. Bauer's class to brush up on their skills after a period of time off.  (*Id.*)  Plaintiff then stated that Dr. Bauer told her that she needed to get an endodontics box with the equipment from the store and then perform a few procedures on the teeth and then give the work back to her.  (*Id.* at 116.)  Plaintiff added that Dr. Bauer told her that there was a possibility that the class would not have an extra tub, so Plaintiff had to wait until all the other students had tubs.  (*Id.* at 116-17.)  The entire conversation, Plaintiff stated, took several minutes." (*Id.* at 117.)

Dr. Bauer stated that no one had ever failed her class, completely. (Bauer Dep. at 11.) She explained that students had failed parts, but not all of a class.  (*Id.*)  When a student failed a portion of class, she would allow them to remediate those portions of the class. (*Id.*)  If a student failed the remediation, she then would have to retake the entire class

5

again. (*Id.*) Dr. Bauer admitted that remediation and what a student had to do to remediate was at her discretion. (*Id.* at 11.)

On January 6, 2010, the ARB met and again reviewed Plaintiff's academic performance. (Def.'s Mot., Ex. B.) The ARB noted that Plaintiff had successfully repeated Clinical Foundations II 621. (*Id.*) The ARB also noted that Plaintiff had received an incomplete for Comprehensive Case Clinic 620, Oral Medicine, Radiology 620A and Restoratives 620C. (*Id.*) The ARB informed Plaintiff that if she did not resolve her I grades before the end of the next term, the Is would become Es. (*Id.*) The ARB told Plaintiff to contact the professors directly to resolve her incomplete grades. (*Id.*) In the letter, the ARB also reminded Plaintiff that "any deficiency [in her grades] [would] result in a review by the Executive Committee and [would] be considered grounds for immediate dismissal." (*Id.*)

On March 11, 2010, Dr. Henry Temple, Chair of the ARB, wrote a memorandum to Plaintiff informing her of her two failing grades in 613 and 614 and how to proceed to retake those examinations. (Def.'s Mot., Ex. B.) Dr. Temple told Plaintiff to meet with the professors of those courses to discuss further action. (*Id.*)

On March 15, 2010, the EC sent Plaintiff a reminder of its August 6, 2009 determination allowing Plaintiff to enroll. (Def.'s Mot., Ex. B.) The EC noted Plaintiff's D grades in courses 613 and 614. (*Id.*) And the EC pointed out, again, to Plaintiff, that a deficient grade could result in immediate dismissal. (*Id.*)

On March 26, 2010, the EC again acknowledged Plaintiff's deficient grades but stated that it would revisit Plaintiff's entire academic record at its May 26, 2010 meeting. (Def.'s Mot., Ex. B.) At the May, 2010 meeting, the EC decided to allow Plaintiff to complete her

term, but again reminded her that any deficiency in her academic record could result in immediate dismissal.  (*Id.*)

Plaintiff received the May 26, 2010 letter.  (Def.'s Mot., Ex. B.)

Sometime in June, 2010, Plaintiff stated that she first learned that there was an issue with Dr. Bauer's class, when Plaintiff took the teeth she had been working on to Dr. Bauer to review.  (Pl.'s Dep. at 121.)  When she asked Dr. Bauer if she had time, Plaintiff stated that Dr. Bauer told her that the teeth and whether she had time did not matter, because she had not been aware of Plaintiff's situation, that of having to repeat her entire second year. (*Id.* at 121-22.)  Plaintiff stated that Dr. Bauer told her that she was on the roster, but that she could not give a grade to Plaintiff because she did not complete the course requirements.  (*Id.* at 121.)  And Plaintiff stated that Dr. Bauer denied telling Plaintiff the substance of how Plaintiff remembered the lounge area conversation.  (*Id.* at 122.)

Dr. Bauer stated that the dental school never told her of any student who had to retake her course.  (Bauer's Dep. at 20.)  Dr. Bauer added, though, that Plaintiff never told her that she had to retake the class, either.  (*Id.*)

Dr. Bauer admitted that her policy was, if a student had passed her class before, then that student just needed to show competency before treating patients.  (Bauer Dep. at 91.) And she admitted that she had the discretion to determine, what, if anything, a student needed to do to retake her course.  (*Id.* at 95.)  Dr. Bauer stated that if a student failed a quiz or a competency, she could allow that student to retake the competency, but she did not know whether she could allow a student to do that who failed a course.  (*Id.* at 99.)

On June 8, 2010, with the help of Dr. Woolfolk, Plaintiff drafted a letter to the EC. (Def.'s Reply, Ex. A.)  On June 8 or 9, 2010, Plaintiff sent the letter to the EC.  (Def.'s Mot.,

7

Ex. B.)  She informed the EC that she had received a "Y" (grade deferred) in Dr. Bauer's 637 Preclinical Endodontics class.  (*Id.*)  Plaintiff stated that the Y was due to a miscommunication between her and Dr. Bauer.  (*Id.*)  Plaintiff added that there was no opportunity to take the class for a year.  (*Id.*)  She then asked the EC for an exception to continue her enrollment.  (*Id.*)  She stated that she met with Dr. Bauer and Dr. Bauer said that "she would not have exempted [Plaintiff] from class participation if she had known certain aspects of my repeating the D2 year." (*Id.*)  Plaintiff admitted that she "should have followed up with additional correspondence to assure her understanding of [Plaintiff's] situation."  (*Id.*)

Diana McFarland, the EC's secretary, forwarded Plaintiff's June 9, 2010 letter to the EC.  (Def.'s Reply, Ex. B.)  McFarland informed the EC's members that the EC would need to re-visit Plaintiff's situation.  (*Id.*)  McFarland also asked the EC members whether they would like Dr. Bauer or Dr. Woolfolk available for the meeting.  (*Id.*)

On June 15, 2010, the EC wrote another letter to Plaintiff, informing Plaintiff that it met on June 9, 2010.  (Def.'s Mot., Ex. B.)  The EC noted Plaintiff's failure to attend and successfully complete her 637 Endodontics class.  (*Id.*)  That failure, in conjunction with Plaintiff's overall academic record and her failure to fully embrace and the conditions for continued enrollment, led the EC to terminate Plaintiff's enrollment in the DDS program "effectively immediately."  (*Id.*)

Plaintiff wrote to Dr. Bauer.  (Def.'s Mot., Ex. B.)  Plaintiff informed Dr. Bauer that the EC had dismissed her from the program and that, if Plaintiff were to have any relief from the dismissal, she had to start with Dr. Bauer. (*Id.*)  Plaintiff stated that another teacher heard what Dr. Bauer said to Plaintiff and that that teacher said he would have felt

8

deceived.  (*Id.*)  Plaintiff stated that she was just acting on what another student had told her, MG, in a similar situation.  (*Id.*)

The associate dean at the time, Carol Murdoch-Kinch, stated that the EC's decision was final and that Plaintiff could not appeal that decision.  (Kinch Dep. at 64.)  But she added that she did facilitate Plaintiff's ability to appear at the EC and give her an opportunity to speak.  (*Id.*)

Plaintiff offers MG as a similarly situated person whom Dr. Bauer treated differently.  (Pl.'s Resp., Ex. 4, MG Decl.)  MG is an African-American male who earned his doctor of dental surgery from the University of Michigan Dental School in 2011.  (MG Decl. ¶¶ 4, 5.)  He began his dental education in 2006.  (*Id.* ¶ 6.)  MG performed poorly academically in his second year and the dental school dismissed him.  (*Id.* ¶ 7.)  He then went through the process of learning about academic probation.  (*Id.* ¶ 8.)  He stated that he found the process of getting off academic probation "extremely confusing" because the dental school did not have a policy regarding the proper procedure for retaking courses or exams.  (*Id.*)  He added that he learned that the professors had "sole discretion" in dictating how students could retake courses.  (*Id.*)  MG appealed the dismissal to the dental school's executive committee and it allowed him to re-enroll in the dental school provided that he repeat his second year.  (*Id.* ¶¶ 9, 10.)  MG stated that he told his second year teachers that he would have to retake their courses.  (*Id.* ¶ 11.)  MG stated that several of his second year teachers told him that he did not need to retake their courses at all.  (*Id.* ¶ 12.)  MG stated, though, that Dr. Bauer said that MG could just take the clinical final and that he would not have to do the work throughout the course.  (*Id.* ¶ 13.)  MG explained to Dr. Bauer that he

9

was getting married during the first week of her course and then would be on his honeymoon the second week of her course.  (*Id.*)

During his second second year, MG stated that he met Plaintiff.  (MG Decl. ¶ 15.)  At the end of his repeat year, MG explained that Plaintiff approached him about retaking her second year.  (*Id.* ¶¶ 17, 18.)  MG added that Plaintiff particularly asked about Dr. Bauer and he told Plaintiff that Dr. Bauer had been very flexible with him when he had to retake her course.  (*Id.* ¶ 20.)

Dr. Bauer admitted that MG did not repeat the entire course, as the EC had required him to do, in accordance with his EC letter. (Bauer Dep. at 106.)  Dr. Bauer explained that she did not know about the EC letter in either MG or Plaintiff's case.  (*Id.* at 116-17.)

## II.    Rule 56 summary judgment standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

10

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.   Analysis

### A. Defendant Bauer, in her official capacity, is entitled to Eleventh Amendment immunity

Generally, "[s]tate governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (citations omitted) (insertion in *Rodgers*.)

11

"Specifically, the Eleventh Amendment bars § 1983 suits seeking money damages against states and state employees sued in their official capacities." *Id.* (citations omitted).

To the extent any claims against Dr. Bauer, in her official capacity, remain, the Court dismisses them.

### B.  Dr. Bauer is only liable for her unconstitutional behavior

To state a § 1983 claim against an individual, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citation omitted). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Id.* (citation omitted).

Initially, the Court questions the efficacy Plaintiff's allegations that Dr. Bauer violated Plaintiff's procedural and substantive due process constitutional rights as well as her Equal Protection constitutional rights, in Dr. Bauer's individual capacity.  At the hearing, Plaintiff's counsel argued that Dr Bauer acted in an "arbitrary manner," therefore triggering constitutional protections.  Plaintiff has not demonstrated that Dr. Bauer acted arbitrarily. The Court, though, addresses the claims to show that Plaintiff cannot establish that Dr. Bauer violated her constitutional rights.

### C.  Plaintiff has failed to establish an Equal Protection claim

Dr. Bauer argues that Plaintiff cannot establish an Equal Protection claim.  (Def.'s Mot. at 19.)  She argues so, stating that Plaintiff dismissed her race discrimination claim

and that Plaintiff cannot identify a similarly-situated white student who was treated differently than her. (*Id.*) Defendant also argues that the right to education is not a fundamental right and therefore Plaintiff cannot prove that Defendant intentionally treated her differently from others similarly situated without any rational basis for the difference. (*Id.*) Defendant offers, given Plaintiff's "well-documented academic deficiencies," and her failure to complete Endodontics I 637, that she cannot meet her burden. (*Id.*)

Plaintiff argues that she can show that Dr. Bauer violated her Equal Protection rights under two theories. Plaintiff first argues that she may proceed on a "class of one theory" against Dr. Bauer. She then argues, for the first time in her response to Dr. Bauer's motion for summary judgment, that she has asserted sufficient evidence to establish a prima facie case of Equal Protection gender discrimination, given that Dr. Bauer treated MG, a male similarly-situated student, differently from her. (Pl.'s Resp. at 18.)

### 1.  The Equal Protection Clause

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citation omitted).

### a.  Plaintiff cannot bring a class of one Equal Protection claim

A plaintiff can bring a class of one Equal Protection claim when she "alleges that the state treated [her] differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th Cir. 2005) (citation omitted). "The 'rational basis' test means that courts will not overturn

13

government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Id.* at 710-11 (citations omitted, insertions in *Warren.*). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways; either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005) (citations omitted, insertion in *Warren.*).

The Supreme Court, though, has limited the "class of one" Equal Protection claim in the public employment context. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008). While this case does not involve public employment, i.e., Plaintiff is not an employee of the school,  the Court must go through a review of *Engquist* to show how the class of one theory applies in very limited circumstances, and not here.

In *Engquist*, the Supreme Court found that the public employment situation was different from the class of one theory it put forth in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).  The Court stated that, in *Olech*, the plaintiff/property owner sought to connect her property to the municipal water supply.  *Engquist*, 533 U.S. at 601.  The defendant village sought a 33-foot easement on the plaintiff's property, when previously, it had only sought 18-foot easements for that connection.  *Id.*  The plaintiff sued and the Court allowed the plaintiff's class of one Equal Protection claim to proceed. *Id.*  The Court held that the plaintiff had stated a valid claim under the Equal Protection Clause because she alleged that she had been "intentionally treated differently from others similarly situated and that

14

there [was] no rational basis for the difference in treatment." *Id.* The Court noted that the Equal Protection Clause required at least a rational reason for different treatment of similarly-situated persons. *Id.* at 602. In *Olech*, the Court noted, the plaintiff had alleged that the defendant did not give a rational reason for the differential treatment and that allegation implicated Equal Protection issues. *Id.* The Court further noted, though, that "[w]hat seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.*

The Court reasoned that not all cases presented a clear standard of state action. *Engquist*, 553 U.S. at 603. The Court stated

> [t]here are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* The Court explained that "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.* at 604. Given that principle, the Court held that the class of one theory of Equal Protection"–which presupposed that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review–is simply a poor fit in the public employment context." *Id.* at 605. The Court found that treating employees differently is not classifying "them in a way that raises equal protection concerns." *Id.*

15

"Rather, [that treatment] is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id.* The Court held that that type of challenge "is a challenge to the underlying nature of the government action." *Id.* The Court further held that it would not ratify a class of one theory of Equal Protection in the public employment context because it would impermissibly "constitutionalize the employee grievance." *Id.* at 609. The Court stated that "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* (citation omitted).

While not directly on point, *Engquist* has provided a structure for the Court to analyze Plaintiff's situation, a student alleging a class of one Equal Protection theory against a professor or continuing education institution. Other district courts have extended *Engquist* to the education context in a case similar to Plaintiff's. These courts have "found the public education context an equally poor fit for class-of-one equal protection claims due to the inherently discretionary decisionmaking that occurs there." *Nofsinger v. Virginia Commonwealth Univ.*, 12-236, 2012 WL 2878608, at *11 (E.D.Va. July 13, 2012) (and also noting the "deleterious effects that would befall our public institutions of higher education if constitutional questions constantly arose out of grades and evaluations."). *See also Yan v. Penn State Univ.*, 10-00212, 2010 WL 3221828, at *5-6 (M.D.Pa. Aug. 13, 2010) (holding that *Engquist* precluded the plaintiff from bringing a class of one theory of Equal Protection against the university for her expulsion from a Ph.D. program.).

The Court agrees with the cited cases and finds that the class of one Equal Protection claim is a poor fit for the facts. Here, there is no clear standard by which Dr. Bauer

16

evaluated students retaking parts of her class, for she testified that she had the discretion to allow certain students who failed portions of her class to redo those specific portions. Given no clear standard and Dr. Bauer's discretion to fashion how she conducts her class and allows students to retake portions of her class, the case falls outside of *Olech*, and within *Engquist*'s class of one theory of Equal Protection bar.

> **b. Plaintiff cannot bring a equal protection gender discrimination claim, and even if she could, she has failed to show that MG was similarly situated in all relevant aspects**

Plaintiff alleges, for the first time in her response to Defendant's motion for summary judgment, that Defendant violated her Equal protection rights based on her gender. The Court notes that the pleadings, up and until the response, made no mention of gender disparate treatment. Nor did any of the discovery in this case address whether Dr. Bauer treated Plaintiff differently because Plaintiff was a woman. The first time Defendant had notice of the claim was when she received the response. A year and a half passed before Plaintiff asserted the claim, and two months after discovery. The Court finds that Plaintiff cannot now raise a gender Equal Protection claim simply because she believes that the facts fit. *See City of Columbus, Ohio v. Hotels.com*, 693 F.3d 642 (6th Cir. 2012) (refusing to address an appellant's argument that it raised for the first time in a response to a summary judgment motion and holding that, "[t]he district court did not err in declining to address this claim because it was raised for the first time in response to [the defendant's] motion for summary judgment.").

17

Even if the Court were to allow Plaintiff to raise the claim, her claim fails.  Plaintiff alleges that she has put forth a circumstantial evidence prima facie case of Equal Protection gender discrimination.

Where a plaintiff uses circumstantial evidence to prove her claim, the court analyzes the claim using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]  If the plaintiff puts forth a prima face case of discrimination, then the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. *Id.* (citation omitted).  If the defendant does so, "then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext."  *Id.* (citation omitted).

To establish a prima facie case, then, a plaintiff must show: (1) membership in a protected group; (2) qualification for the position in question; (3) an adverse action; and (4) and different treatment of a similarly situated nonprotected person. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013)(citation omitted). *See Warf v. U.S. Dept. of Veterans Affairs*, 713 F.3d 874, 879 (6th Cir. 2013) (listing similar elements for a gender discrimination prima facie prima facie case.).

As an African-American woman, Plaintiff is a member of a protected class for race and gender.  *Oliver v. St. Luke's Dialysis LLC*, 491 F.App'x 586, 587 (6th Cir. 2012) (citations omitted).

---

[2]*See Jachyra v. City of Southfield*, 97 F.3d 1452, at *3 (6th Cir. 1996) (table index) ("To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under . . . the *McDonnell Douglas/Burdine* framework.") (citation omitted).

18

The parties focus on the similarly-situated prong.  For a plaintiff to show that she was treated differently than a similarly situated male for the same or similar conduct, she must show that "all relevant aspects" of her situation are "nearly identical" to those of the allegedly similarly situated persons.  *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (quotation marks and citations omitted).  The male must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish his conduct or the teacher's treatment of him for it.  *Id.* (quotation marks and citations omitted).

At first glace, MG appears to be a similarly situated person to Plaintiff.  But he is not.  And his declaration shows how he is not similarly situated.  While MG did have to repeat his second year, as Plaintiff did, under similar conditions that the EC imposed, and he did have to talk with Dr. Bauer about retaking her class, there are differentiating and mitigating circumstances that distinguish his conduct and Dr. Bauer's treatment of him.  First, MG told Dr. Bauer about his extenuating circumstances of him getting married during the first week of her course and that he had his honeymoon planned for the second week.  That circumstance takes MG out of a similarly situated person as to Plaintiff, for he was unable to attend class and made Dr. Bauer aware of that fact.  Second, MG apparently told Dr. Bauer enough information about needing a grade in the course that she required him to take the written exam, which he did, whereas Plaintiff did not.

The onus was on Plaintiff to convey sufficient information to Dr. Bauer so that Dr. Bauer could properly fashion the course's requirements to Plaintiff.  Plaintiff admitted as much in her letter to the EC on June 9, 2010, when she stated that there was a

19

miscommunication between her and Dr. Bauer and that she should have followed up with Dr. Bauer.

Plaintiff has not shown that MG was similarly situated to her in all relevant aspects without mitigating or differentiating circumstances.  Plaintiff's equal protection claim fails.

**D. Due Process claims**

The Fourteenth Amendment's Due Process Clause provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law."  U.S.CONST. amend. XIV, § 1.  The Due Process Clause contains a substantive and procedural component.  *Heike v. Guevara*, 10-1728, 2013 WL 1092737, at*10 (6th Cir. Mar. 18, 2013). "Substantive Due Process protects individuals from government conduct that 'shocks the conscience,' . . . . or interferes with rights 'implicit in the concept of ordered liberty[.]'"  *Id.* (citations omitted).  Procedural Due Process requires that the government, when depriving a person of life, liberty or property in a substantively constitutional manner, implement the deprivation in a "fair manner."  *Id.*  (citations omitted).

**1. Plaintiff does not have a substantive due process right to continued enrollment in dentistry school**[3]

---

[3]Defendant filed its motion for summary judgment before the parties dismissed the University of Michigan and Dr. Woolfolk.  The motion for summary judgment, then, addresses Dr. Bauer and the two Defendants above as "Defendants," and does not delineate the allegations or claims against the various defendants.  The Court questions Plaintiff's ability to even raise the due process challenges against Dr. Bauer individually, because there is no indication in the record that she was personally involved in the decisionmaking or appeal processes, save for being giving the grade that appears to have been the 'last straw' in Plaintiff's academic career at the school.

Plaintiff argues that Dr. Bauer violated her substantive due process right because she violated "her protected property right in her continued education, her constitutional right to Equal Protection, and/or [she] took an action that 'shocked the conscience.'" (Pl.'s Resp. at 14.)  Defendant argues that Plaintiff's "alleged property right to continued enrollment in the School of Dentistry and alleged liberty interest in pursing further education are not fundamental rights," protected by a substantive due process claim.

Defendant is correct.

Substantive due process rights are much narrower than procedural due process rights.  *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003).  Whereas the legislature may substantively modify or abolish procedural due process rights, legislatures may not infringe substantive due process rights "unless [the infringement] is supported by sufficiently important state interests, includ[ing] those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that 'shock the conscience,' . . .and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental."  *Id.* at 250 (citations omitted).  The Sixth Circuit quoted the Supreme Court,

> we have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended.  By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action.  We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of the Court.

*Id.* (citations omitted).  Heeding this reluctance, the Sixth Circuit held that it "can see no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process."  *Id.* at 251.  The Sixth Circuit reasoned,

> [c]ertainly the contention that the medical college's actions were arbitrary or capricious cannot be sufficient; otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state of federal Administrative Procedure Act.

*Id.* (citations omitted).  The Sixth Circuit continues to prohibit plaintiffs from asserting substantive due process claim violations for continuing education dismissals.  *See Rogers v. Tenn. Bd. of Regents*, 273 F.App'x 458, 463 (6th Cir. 2008) (stating that the Sixth Circuit has "rejected the notion that substantive due process protects a medical student's interest in continuing education."); *and Yoder v. University of Louisville*, 12-5354, 2013 WL 1976515, at *10, n. 7 (6th Cir. May 15, 2013) (Table) (noting that the Sixth Circuit "has rejected the notion that substantive due process protects a medical or nursing student's interest in his or her continued enrollment."); *and McGee v. Schoolcraft Cmty. College*, 167 F.App'x 429, 437 (6th Cir. 2006) (same).

Given this precedent, the Court finds that Plaintiff cannot prevail on her substantive due process claim against Dr. Bauer.  The Court dismisses this claim with prejudice.

### 2. Dr. Bauer did not violate Plaintiff's procedural due process rights

Plaintiff argues that Plaintiff was not fully informed of Dr. Bauer's dissatisfaction, and that failure constitutes a procedural due process rights violation.  (Pl.'s Resp. at 17.) Defendant, in her motion, frames Plaintiff's procedural due process rights claim as a claim against her entire dismissal from the DDS program.  (Def.'s Mot. at 17-18.)

22

The Court finds that the proper inquiry is whether Dr. Bauer violated Plaintiff's procedural due process rights claims in the entire dismissal from the DDS program.  In her complaint, Plaintiff alleges that she has a property right in her continued enrollment, she does not allege a property right, or argue that a property right exists, that a teacher must fully inform a graduate student when she is dissatisfied with a student's work or a student's failure to follow through and make sure that she is meeting all the necessary requirements.

"The right to procedural due process requires that when a State seeks to terminate a protected interest it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective."  *Heike*, 2013 WL 1092737, at *11. (citations omitted).  To establish a procedural due process rights violation, a plaintiff must show (1) that she was deprived of a protected liberty or property interest, and (2) that the deprivation occurred without the requisite due process of law.  *Id.* (citations omitted).

The first prong requires a court to "determine the precise nature of the interest at stake."  *Heike*, 2013 WL 1092737, at *10.  A protected interest is "more than an abstract need or desire," or a "unilateral expectation."  *Id.* (citation omitted).  "Rather, a property interest exists and its boundaries are defined by rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.* (citation omitted).  "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances."  *Id.* (citation omitted).

The second, "core," prong "is the right to notice and a meaningful opportunity to be heard."  *Heike*, 2013 WL 1092737, at *12 (citation omitted).

23

### a. Plaintiff arguably has a property interest in her continued enrollment at the school

Michigan law determines whether Plaintiff has a property interest in her continued enrollment at the school.  *Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003) ("because property interest are creatures of state law, [the plaintiff is] required to show . . . that her seat at the Medical School was a 'property' interest recognized by [] state law." (deletion in *Bell*.)).

Here, the parties disagree as to whether, in Michigan, a student such as Plaintiff, has a protected property right in continuing graduate school.  The Court, as many courts before, assumes a property right exists and moves to the second prong.  *See Zwick v. Regents of University of Michigan*, 06-12639, 2008 WL 1902031, at*3-4 (E.D.Mich. Apr. 28, 2008) (Battani, J.) (stating, "[t]hough the arrangement between student and school does not rise to the level of a contractual relationship, the [c]ourt determines that a student has enough of a property interest in continued enrollment to require the basic protections of due process.").

### b. Plaintiff was afforded procedural due process for her dismissal

Plaintiff was afforded due process in her final dismissal, whether Dr. Bauer was involved in the final decision, or simply the impetus for the final decision.

The Court first notes that the EC had imposed the "any deficiency" condition on Plaintiff's retaking her second year courses.  The EC informed Plaintiff throughout her second year about that condition and about Plaintiff's academic process and failings and her need to improve her scores again, during her second year.

24

Plaintiff knew that the deficiency in Dr. Bauer's class was going to be a problem for the EC.  Plaintiff took it upon herself to write the EC the day before it met to discuss Plaintiff's future at the school.   Plaintiff admitted that she and Dr. Bauer had a miscommunication about Dr. Bauer's class.  And Plaintiff admitted that she should have followed up with Dr. Bauer about the course's requirements and clearly communicated her situation to Dr. Bauer.  Plaintiff then asked for another exception from the EC.  The EC received this letter and, after a review of Plaintiff's academic history at the school, decided to no longer allow Plaintiff any exceptions or to further enroll.

Plaintiff had all the process that was due to her.  She was on notice from the EC that any deficiency could result in not being allowed to continue at the school . She knew when the EC was going to meet.  And she was able to convey her position and explain the circumstances around her receiving the "Y" grade from Dr. Bauer.  She therefore had notice and an opportunity to be heard.  *See Flaim v. Medical College of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005) (stating the two basic due process requirements are notice and an opportunity to be heard.) (And noticing "[t]he type of notice and hearing will vary and be judged for sufficiency based on the context in which the dispute arose.") (citation omitted).

*Rogers v. Tenn. Bd. of Regents*, 273 F.App'x 458, 463 (6th Cir. 2008) is instructive as to what process is due in an academic dismissal setting. In *Rogers*, the plaintiff was dismissed from a nursing program at a community college. 273 F.App'x at 459.  The plaintiff appealed her grade and dismissal to the administration in accordance with the procedures set forth in the student handbook.  *Id.*  The administration denied her request. *Id.*  The plaintiff then filed suit in federal court alleging that the administration violated her

substantive and procedural due process rights. *Id.* The Sixth Circuit affirmed the district

court's granting of summary judgment for the defendants. *Id.* at 462. The Sixth Circuit

stated that the administration offered the plaintiff constitutionally sufficient process and that

substantive due process did not protect her interest in her nursing education. *Id.*

The Sixth Circuit first summarily dismissed the § 1983 procedural due process claim.

*Rogers*, 283 F.App'x at 462. The court quoted that, in cases of academic dismissal from

a state education institution,

> when the student has been fully informed of the faculty's dissatisfaction with
> the student's academic progress and when the decision to dismiss was
> careful and deliberate, the Fourteenth Amendment's procedural due process
> requirement has been met. No formal hearing is required for academic
> decisions because such academic decisions "require[] an expert evaluation
> of cumulative information and [are] not readily adapted to the procedural
> tools of judicial or administrative decisionmaking.

*Id.* (citations omitted, insertions in *Rogers*.). The court then reasoned that, even assuming

that a protected liberty interest existed, the plaintiff was fully informed of her unsatisfactory

clinical performance and the decision to dismiss the plaintiff "was made carefully and

deliberately." *Id.* The court noted that the community college carefully and deliberately

decided to dismiss the plaintiff. *Id.* at 463. The court noted that the plaintiff went through

the grade appeal process and presented her case in a hearing to an academic review

board. *Id.* The record also indicated that the plaintiff was provided an additional

opportunity for the plaintiff to obtain a sufficient explanation from one of the professors. *Id.*

Here, the decision was careful and deliberate. The EC afforded Plaintiff an appeal

process. The ARB heard her appeal, at which Plaintiff appeared. Then, both the ARB and

EC put conditions on her repeat of her second year. The EC informed Plaintiff of her

academic status and her failing grades throughout her repeat year.  When the EC met to determine whether Plaintiff would continue at school, it received Plaintiff's letter explaining her situation and there is no evidence that the EC did not consider Plaintiff's situation carefully or deliberately.  The EC also informed Plaintiff that its decision was based off of Plaintiff's entire academic career, not solely the Y grade in Dr. Bauer's class.

Plaintiff's due process claim fails.

### E.  Dr. Bauer is entitled to qualified immunity

Dr. Bauer argues that she is entitled to qualified immunity on Plaintiff's claims.  (Def.'s Mot. at 17.)   Plaintiff argues the contrary.  (Pl.'s Resp. at 19-20.)  Because, as the Court has discussed above, Plaintiff has not shown that a constitutional violation has occurred, the Court finds that Dr. Bauer is entitled to qualified immunity.

"The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights."  *Yoder v. University of Louisville*, 12-5354, 2013 WL 1976515, at *6 (6th Cir. May 15, 2013) (citation omitted).[4]  "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.* (citation omitted).  "The doctrine focuses on 'the objective reasonableness of an official's conduct, as measured by reference to clearly established law' to 'avoid

---

[4]"Qualified immunity protects officials from monetary damages in their individual capacities only[.]" *Faith Baptist Church v. Waterford Twp.*, 10-1406, 2013 WL1489387, at *4 (6th Cir. Apr. 11, 2013) (citation omitted).

excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Id.* (citations omitted).

Courts conduct a two-step inquiry in determining whether qualified immunity applies: (1) whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated and (2) whether that right was clearly established. *Id.* (quotation marks and citations omitted).   Courts may address either step first.   *Id.* (citation omitted).

Here, Plaintiff has not shown that Dr. Bauer violated her constitutional rights, as discussed above.   The Court need not therefore address the second step.

## IV.   Conclusion

For the above-stated reasons, the Court GRANTS Dr. Bauer's motion for summary judgment and dismisses the remaining claims with prejudice.

So ordered.

s/Nancy G. Edmunds                              
Nancy G. Edmunds
United States District Judge

Dated:  July 18, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 18, 2013, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams                    
Case Manager
Acting in the Absence of Carol A. Hemeyer

28